# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

David Alexander Schill, Jr.,

        Plaintiff,

v.

Joey Pederson, Lt., David Casanova, Administrator, Chad Johnson, Sgt.,

        Defendants.

Case No. 0:16-cv-01280-DWF-KMM

**REPORT AND RECOMMENDATION**

---

David Alexander Schill, Jr., OID# 233424, 2305 Minnesota Boulevard S.E., St. Cloud, MN 56304, pro se plaintiff

Jessica E Schwie, Esq., and Tal Aaron Bakke, Esq., Jardine Logan & O'Brien PLLP, 8519 Eagle Point Blvd., Lake Elmo, MN 55402, counsel for the defendants

---

David Alexander Schill, Jr., is a Minnesota prisoner currently confined at the Minnesota State Correctional Facility in St. Cloud, Minnesota ("MCF St. Cloud"). He filed his complaint on May 9, 2016. [Compl., ECF No. 1.] On August 15, 2016, the defendants, Lieutenant Joey Pederson, Sergeant Chad Johnson, and Jail Administrator David Casanova, filed a motion to dismiss the complaint under Rule 12 of the Federal Rules of Civil Procedure. [Defs.' Mot., ECF No. 15.] In support of their motion, the defendants contend: that the Court lacks jurisdiction because Mr. Schill failed to exhaust his administrative remedies; that Mr. Schill lacks standing to bring his claim

for equitable relief; and that Mr. Schill has failed to state a claim upon which relief can be granted.  [Defs.' Mem. at 7-13, ECF No. 16.]  The District Court referred defendants' motion to dismiss to the undersigned for a report and recommendation in accordance with 28 U.S.C. § 636.  The starting place for the Court's consideration is Mr. Schill's complaint.

## I.    Factual and Procedural Background

Broadly speaking, this lawsuit concerns Mr. Schill's relationship with a correctional officer named Trudy Hofer and his dissatisfaction with the way the defendants responded when they learned of that relationship.  The following recitation of the facts is drawn from the body of Mr. Schill's complaint [ECF No. 1] and his statement of additional facts [Pl.'s Additonal Facts, ECF No. 1-1].  Mr. Schill's statement of additional facts is a lengthy, sincere, handwritten narrative.  It provides profuse detail about his relationship with Ms. Hofer, his discussions and disagreements with fellow inmates and the defendants arising out of that relationship, and other matters that are extraneous to his claims.  Below the Court discusses those factual allegations that appear central to the dispute.  Because this matter is before the Court on a motion to dismiss, the Court accepts the factual allegations in Mr. Schill's pleadings as true, but has not made any determination concerning the veracity of any allegation.

### A. The Pleadings

During the period relevant to his complaint, save for a few weeks between May 2015 and June 2015 when he was not in custody, Mr. Schill was confined at the Northwest Regional Corrections Center in Crookston, Minnesota ("NWRCC").  In February 2015, Mr. Schill began a romantic relationship with Ms. Hofer, which he alleges continued throughout his time at the NWRCC.  He and Ms. Hofer had frequent disagreements and reconciliations.  During their relationship, Ms. Hofer allegedly made sexually suggestive comments and engaged in sexually suggestive behaviors.  At the hearing on the motion to dismiss, Mr. Schill confirmed that the two did not have a sexually intimate or physical relationship, but he stated that he kissed Ms. Hofer's hand when the two discussed marriage.

Following an argument in November 2015 that arose because Ms. Hofer allegedly ignored Mr. Schill, he told several correctional officers at the NWRCC about their relationship.  This led the NWRCC to issue an order that Mr. Schill and Ms. Hofer were to be kept apart (the "keep-separate order").  The keep-separate order required Mr. Schill to be placed in a different area of the facility than those in which Ms. Hofer worked.  Mr. Schill made several complaints about the order, leading defendants Lieutenant Pederson and Administrator Casanova to begin an investigation in January 2016.  Apparently, the defendants questioned the truth of Mr. Schill's claim that he and Ms. Hofer were in a relationship.  Mr. Schill had a conversation with Lieutenant Pederson and gave him the name of witnesses who

could confirm that Mr. Schill had a genuine relationship with Ms. Hofer.  But on February 2, 2016, "[unidentified NWRCC officials] closed the case with a promise and handshake and threat to lock [Mr. Schill] in sigma[1] to keep [him] quiet."  [Compl. at 5.]  Mr. Schill alleges that the defendants were engaged in covering up the fact of his relationship with Ms. Hofer and destroyed video footage that would have confirmed it existed.

Mr. Schill filed grievances regarding these issues, but the defendants failed to respond or responded too late.  He complained to the Executive Director of Tri-County Community Corrections, Andy Larson.  Director Larson wrote to Mr. Schill, telling him that he was aware of Mr. Schill's complaints and the events in the NWRCC, was in the process of investigating, and would coordinate with Lieutenant Pederson and Administrator Casanova.  In April 2016, Mr. Schill tried to call a local victim tip line to make a report, but he could not do so from jail because the tip line did not accept collect calls.

In his prayer for relief, Mr. Schill requests the following injunctive relief:

> I want all party's releaved of there duties of being correctional officers. I want remidy for mental abuse and slander of my name and person. I believe something should happen because the Lt. and Administrator never took any of this serious and tried to cover it up. The keep seprit happened December 9 still nothing.

[Compl. at 7.]

---

[1]     "Sigma" appears to be the name of a more restrictive unit within the NWRCC facility.

### B. Mr. Schill's Subsequent Filings

After Mr. Schill received the defendants' motion to dismiss, he argued that they misread his complaint.[2] He clarified that he seeks relief under the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. §§ 15601-15609. [Pl.'s Resp. at 1-2, ECF No. 21.] Mr. Schill asserted that "[t]he claim I am making and have been making was I reported the existence of a PREA act taking place in there [sic] jail that they are trying to cover up the fact of." [*Id.* at 1; *id.* at 2 ("Like I said [t]hese officers are trying there [sic] best to cover all this up and didn't do there [sic] job properly in a PREA situation that was reported. . . . My claims are my rights were violated because officers didn't respond timely to my complaints of this PREA act.").] Thus, reasonably construed, Mr. Schill alleges that he reported Ms. Hofer's conduct to officials at the NWRCC including the defendants, and under the PREA, the defendants were required to take certain actions to protect him and discipline Ms. Hofer. Contrary to that duty, Ms. Hofer was allowed to continue working at the NWRCC, and the defendants attempted to cover up Ms. Hofer's conduct.

---

[2]      In his response to the motion to dismiss, Mr. Schill states that he is not pursuing  acclaim .  [Pl.'s Resp. at 2.]  Because Mr. Schill has disavowed any such claim that he is challenging the keep-separate order, the Court will not address such a claim in this report and recommendation.

## C. The Hearing

The Court held oral argument on the defendants' motion to dismiss Mr. Schill's complaint on October 31, 2016, at which the defendants appeared by counsel and Mr. Schill appeared pro se by telephone from MCF-St. Cloud.  [Oct. 31, 2016 Minute Entry, ECF No. 28.]  During the hearing, Mr. Schill provided some clarification about the nature of his claims.  In particular, he explained that the defendants failed to adequately investigate his report of the relationship with Ms. Hofer, and in their cover-up efforts, they gave him the option to falsely state that the relationship was not real or risk being placed in segregated housing.  This assertion echoes some of the language in Mr. Schill's complaint.  [Compl. at 3 ("Nothing has happened [since his reports of the relationship] other then they said there is no proff of Relationship. Promis man to man to drop it and if it doesn't stop they were going to put me in sigma."); *id.* at 5 ("[T]hey closed the case with a promis and handshake and theat to lock me in sigma to keep quiet.").]

## II.   Standing

The defendants argue that this matter should be dismissed because Mr. Schill, who is no longer incarcerated at the NWRCC, lacks standing to obtain the equitable relief he requests in his complaint.[3]  Because he is seeking prospective injunctive

---

[3]     Mr. Schill's prayer for relief does not include a request for compensatory damages.  It is unclear whether Mr. Schill seeks any such relief.  If he does not, then his lack of standing to obtain the injunctive relief he requests would be dispositive of

(Footnote continued on following page)

relief, the defendants argue that Mr. Schill most show there is a real and immediate threat that he will be wronged again and he cannot do so now that he is in a different facility.  [Defs.' Mem. at 10.]

A motion to dismiss for lack of standing is a challenge to the Court's subject-matter jurisdiction under Rule 12(b)(1).  If a plaintiff lacks standing, a district court has no subject matter jurisdiction over the matter and must dismiss the case.  *Young Am. Corp. v. Affiliated Comp. Servs., Inc.*, 424 F.3d 840 (8th Cir. 2005).  To establish constitutional standing under Article III, a plaintiff must show: (1) an injury in fact; (2) a causal connection between that injury and the challenged conduct; and (3) the likelihood that a favorable decision by the Court will redress the alleged injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  When a plaintiff seeks injunctive relief, he must show that he "faces a threat of future or ongoing harm." *Park v. Forest Serv. of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000). Speculation that a future injury may occur is inadequate to support a claim for injunctive relief, *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), and the plaintiff must show that the threat is "real and immediate," *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). If a plaintiff is able to show that a threat of future harm is real and immediate, he can show that injunctive relief

---

(Footnote continued from previous page)
the litigation.  However, because Mr. Schill is pro se and may have intended to seek a monetary legal remedy, the Court will also analyze whether Mr. Schill's pleadings state a claim on which relief can be granted.

"will remedy the alleged harm." *Stell Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998).

Mr. Schill's claim for equitable relief consists of a request that the defendants be removed from their positions at the NWRCC. Mr. Schill is no longer housed at the NWRCC. Instead, he is currently incarcerated at MCF-St. Cloud. "Transfer of a prisoner to a new facility can render that prisoner's claims for injunctive relief moot." *Munt v. Larson*, No. 15-cv-0582-SRN-SER, 2015 WL 5673108, at *15 (D. Minn. Sept. 23, 2015) (citing *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999), and *Martin v. Sargent*, 780 F.2d 1334, 137 (8th Cir. 1985)).  Mr. Schill does not allege that the defendants play any role at MCF-St. Cloud.  Nor does he allege that their continued presence at NWRCC harms him in any way.  Thus, even if Mr. Schill could demonstrate that he was injured by the defendants' conduct, he has not shown that he faces a threat of future or ongoing harm from the defendants that would give him standing to pursue such prospective injunctive relief.  Accordingly, to the extent Mr. Schill seeks the removal of the defendants from their positions as corrections officers, he lacks standing, and his claim for equitable relief should be dismissed for lack of subject matter jurisdiction.

## III.  Failure to State a Claim

The defendants also argue that under Federal Rule of Civil Procedure 12(b)(6) Mr. Schill has failed to state a claim upon which relief can be granted.  They contend that whether Mr. Schill challenges the alleged failure to respond to his grievances

about the inappropriate relationship with Ms. Hofer or the keep-separate order itself, he fails to allege that they engaged in any conduct that amounts to a violation of the Eighth Amendment.  [Defs.' Mem. at 11-13.]

### A. Legal Standard: *Iqbal* and *Twombly*

To survive a motion to dismiss for failure to state a claim, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 500 U.S. 544, 570 (2007).  This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In applying this standard, the Court must assume the facts in the complaint to be true and must construe all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  But the Court does not need to accept as true any wholly conclusory allegations, *Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir.1999), or legal conclusions that the plaintiff draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Because Mr. Schill is representing himself in this litigation, the Court reads his complaint liberally. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  "When we say that a pro se complaint should be given liberal construction, we mean that if the

essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Id.* (citing *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). The Court will also consider statements in Mr. Schill's memoranda and oral argument in analyzing the sufficiency of the allegations in the complaint. *See Pratt v. Corrections Corp. of Am.*, 124 Fed. App'x 465, 466 (8th Cir. Feb. 14, 2005) ("Initially, we note the district court was required to consider the allegations not only in Mr. Pratt's pro se complaint, but also his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings.").

## B. Prison Rape Elimination Act

Congress enacted the PREA to address problems caused by the high incidence of sexual assault in federal and state prisons. *See* 42 U.S.C. § 15602 (explaining the purpose of the PREA); *id.* § 15601 (findings leading to the enactment of the PREA). The PREA requires federal agencies to conduct annual research regarding prison rape, provides funding for training, establishes certain grants for the states, creates a commission to study and report on the impacts of prison rape, and gives the Attorney General rulemaking powers concerning prison rape. 42 U.S.C. §§ 15603-15607.

However, the PREA does not create a private cause of action. *Krieg v. Steele*, 599 Fed. App'x 231, 232-33 (5th Cir. 2015) (per curiam) (concluding that any claim under the PREA was properly dismissed as frivolous in the absence of any law supporting such a claim); *LeMasters v. Fabian*, No. 09-cv-702 (DSD/AJB), 2009 WL

1405716, at *2 (D. Minn. May 18, 2009) ("The Court finds that Plaintiff's current complaint fails to state an actionable claim for relief, because the statute on which this action purportedly is based, the PREA, does not create a right of action that is privately enforceable by an individual civil litigant.").  The language of the PREA does not explicitly include a private cause of action, and the Court is not aware of any case construing the statute to give an individual the right to sue under its provisions.  Even assuming the truth of Mr. Schill's allegations, Mr. Schill could not obtain relief under the PREA in this case.  Because the PREA does not give Mr. Schill the right to pursue a private cause of action, his complaint fails to state a claim under that statute, and any such claim should be dismissed under Rule 12(b)(6).[4]

## C. Eighth Amendment

Mr. Schill's complaint references 42 U.S.C. § 1983, which allows an individual to bring suit against those acting under color of state law for violations of federal constitutional rights.  Mr. Schill does not specifically reference any constitutional provision in his pleading.  Nevertheless, given his pro se status, the Court has attempted to fit his factual allegations into any applicable legal framework.  Mr. Schill alleges that he was a party to an inappropriate romantic relationship with a

---

[4]     The PREA defines the term "prison rape" in 42 U.S.C. § 15609(8), and "rape" in 42 U.S.C. § 15609(9).  Even aside from the issue that the PREA lacks a private cause of action, Mr. Schill does not allege facts that fall within these definitions.  At the hearing, Mr. Schill confirmed that he and Ms. Hofer never engaged in any physical conduct beyond a kiss of the hand.  This does not constitute the sort of contact the PREA was designed to prevent.

correctional officer, a claim which implicates the Constitution's prohibition on cruel and unusual punishment because sexual abuse of an inmate by a prison official may violate the Eighth Amendment.  *See Woodford v. Ngo*, 548 U.S. 81, 118 (2006) ("[T]hose inmates who are sexually assaulted by guards, or whose sexual assaults by other inmates are facilitated by guards, have suffered grave depravations of their Eighth Amendment rights.").  However, Mr. Schill does not allege that the defendants sexually assaulted him, and so he states no claim that they violated the Eighth Amendment by directly subjecting him to sexual abuse.

Instead, he asserts that he reported Ms. Hofer's conduct to the defendants and they failed to take appropriate action.  The case law is clear that "a prison official can be liable under § 1983 for exhibiting deliberate indifference to a substantial risk that a detainee would be sexually assaulted by a guard," *Kahle v. Leonard*, 477 F.3d 544, 554 (8th Cir. 2007), but Mr. Schill has not alleged any facts in his complaint that plausibly suggest Lieutenant Pederson, Administrator Casanova, or Sergeant Johnson were aware of a substantial risk that he would be sexually assaulted.  He does not allege that he told the defendants Ms. Hofer subjected him to sexual abuse.  Indeed, Mr. Schill alleges Ms. Hofer's conduct and his reports did not go beyond sexual comments and gestures, and a single incident in which he kissed her hand.  These incidents do not involve the kind of contact that may constitute unnecessary and wanton infliction of pain.  *See Howard v. Everett*, 208 F.3d 218, 2002 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (per curiam) ("Howard specifically alleged that [defendants] never touched him.

12

We believe this sexual harassment, absent contact or touching, does not constitute unnecessary and wanton infliction of pain.").[5]  Because Mr. Schill's reports did not put the defendants on notice of a substantial risk Mr. Schill had been or would be sexually assaulted by a guard, the Eighth Amendment does not give rise to a claim against them.

In addition, to the extent Mr. Schill claims the defendants failed to protect him from suffering a mental or emotional injury, such a claim must fail because he has not alleged that the he suffered any physical injury as a result of the defendants' alleged failure to protect him from Ms. Hofer's conduct.  42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

### D. Possible Due Process or Retaliation Claim

By alleging that he was threatened with confinement in segregated housing if he did not abandon his complaint about the relationship with Ms. Hofer, Mr. Schill may intend to raise a claim under the Due Process Clause of the Fourteenth Amendment or a retaliation claim under the First Amendment.  However, even with a liberal construction of his pleadings, he fails to state a claim under either of these theories.

---

[5]     Mr. Schill has not named Ms. Hofer as a defendant, but even if he had, he has not alleged that Ms. Hofer subjected him to the kind of sexual contact that is actionable under the Eighth Amendment for the same reasons.

Mr. Schill attributes the threat to place him in segregated housing to no one in particular, and he does not allege that any of the named defendants was personally involved in making the threat.[6] *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (upholding dismissal of prisoner's amended complaint where he "failed to allege sufficient personal involvement by any of the defendants to support" a due process claim).  This failure to allege the defendants' personal involvement in the conduct he complains of warrants dismissal under Rule 12(b)(6).

Even if he were more specific as to which NWCC employees made the threat in question, Mr. Schill's due process rights have not been violated.  To prevail on a due process claim, Mr. Schill needs to show that deprivation of life, liberty, or property occurred.  In the prison setting, this requires him to show that he was subjected to atypical and significant hardship in relation to the ordinary incidents of prison life.  *See Orr v. Larkins*, 610 F.3d 103, 1034 (8th Cir. 2010) (per curiam) (noting that a plaintiff must first demonstrate deprivation of life, liberty, or property to prevail on a due process claim).  Mr. Schill fails to allege that he was actually placed in segregation as a result of his complaints.  And even if he could establish a baseless transfer to segregation rather than just a threat, that would still be insufficient to establish a due process violation unless the changed housing was uniquely onerous or

---

[6]    Mr. Schill's complaint vaguely alleges that "*they* closed the case with a promis [sic] and handshake and theat [sic] to lock me in sigma to keep quiet."  (Compl. at 5 (emphasis added).)

burdensome.  *Phillip v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("We have

consistently held that a demotion to segregation, even without cause, is not itself an

atypical and significant hardship.").

Similarly, even if his report of his relationship with Ms. Hofer was protected

First Amendment activity, because Mr. Schill does not claim that he was actually

transferred to a more punitive confinement as punishment for engaging in protected

activity, he fails to allege a plausible retaliatory discipline claim.  *Cf. Goff v. Burton*, 91

F.3d 1188, 1191 (8th Cir. 1996) (explaining that "a prisoner cannot be transferred [or

disciplined] in retaliation for the exercise of a constitutional right"); *Lewis v. Jacks*, 486

F.3d 1025, 1029 (8th Cir. 2007) (stating that filing a prison grievance is protected First

Amendment activity).  Absent an allegation that he was actually deprived of a

protected due process interest or subjected to retaliatory discipline, the Court cannot

conclude that Mr. Schill has stated a plausible First or Fourteenth Amendment claim.

### E. Untimely Response to Grievances

Mr. Schill's pleadings can also be construed to challenge the adequacy of the

response he received to grievances submitted through the NWRCC's prison grievance

procedures.  However, even if the defendants failed to adhere to the established

inmate grievance procedure, such a violation would not violate Mr. Schill's federal

constitutional rights.  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam)

("We conclude Buckley's first complaint failed to state a claim because no

constitutional right was violated by the defendants' failure, if any, to process all of the

grievances he submitted for consideration.").  Therefore, he fails state a plausible

claim under § 1983 based on such allegations.  Accordingly, the Court concludes that

Mr. Schill has failed to state a claim under § 1983 for any violation of the established

procedures for processing grievances at the NWRCC.

## IV.    Exhaustion of Administrative Remedies

### A. Exhaustion: Not a Jurisdictional Issue

The defendants argue that Mr. Schill's complaint "is barred by 42 U.S.C.

§ 1997e(a) because [he] failed to [exhaust] available administrative remedies prior to

filing suit and this court lacks jurisdiction."  [Defs.' Mem. at 7.]  However, under the

PLRA, failure to exhaust available administrative remedies is not an issue of subject

matter jurisdiction; rather, it is an affirmative defense, which the defendant bears the

burden to plead and prove.  *Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007).

Accordingly, the Court concludes that it does not lack jurisdiction based on any

failure to exhaust available administrative remedies prior to filing suit.  The Court

therefore does not recommend dismissal for lack of jurisdiction.

### B. Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action

shall be brought with respect to prison conditions under section 1983 of [Title 42], or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted."  42 U.S.C.

§ 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).  To properly exhaust available administrative remedies an inmate must comply "with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

In support of their motion to dismiss, the defendants provided an affidavit of counsel and several exhibits to demonstrate that Mr. Schill has failed to exhaust his administrative remedies.  [Defs.' Mem. at 5 (citing Schwie Aff., Exs. 2-11, ECF No. 17).]  The defendants argue that Mr. Schill was aware of an available grievance procedure at the NWRCC.  However, the only grievances he submitted regarding the matters in this complaint were informal; any formal grievances he filed were unlreated to his relationship with Ms. Hofer.  [*Id.*]

At the outset, the Court must decide wehther it should rely upon the evidence outside of the complaint submitted by the defendants.  Courts generally agree that "nonexhaustion should be resolved as early as possible . . . ." *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) (citing *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999)), and 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1277, at 475 (2d ed. 1990)).  A pre-answer motion under Rule 12(b)(1) allows the Court to consider matters outside the pleadings, but because failure to exhaust is not a jurisdictional challenge, such a motion does not fit the nonexhaustion issue.  *Id.* at 249.  A motion for failure to state a claim under Rule 12(b)(6) may be the appropriate vehicle to raise a nonexhaustion issue if the failure to exhaust is obvious

on the face of the complaint. *Id.* But if "it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle." *Id.* at 249. And if the Court consults matters outside the pleadings presented by a defendant raising the exhaustion issue, the Rules of Civil Procedure require the Court to treat the motion as one for summary judgment under Rule 56. *Id.* at 249-50 (citing prior version of current Rule 12(d)).

In suits subject to the PLRA in the District of Minnesota, defendants seeking to obtain dismissal for an inmate's failure to exhaust administrative remedies will frequently bring a motion to dismiss, or in the alternative, for summary judgment. *See, e.g.*, *Wolf v. Johnson*, No. 08-cv-818 (PJS/JSM), 2009 WL 585971, at *4 (D. Minn. Mar. 6, 2009) (discussing the defendant's motion seeking alternative forms of relief). In such cases, when both parties submit materials outside of the pleadings for the Court's consideration, conversion of the motion to dismiss into a motion for summary judgment at an early stage of the litigation may be proper. *See id.*, 2009 WL 585971, at *5 (citing Fed. R. Civ. P. 12(d)).

At the hearing on the motion to dismiss in this case, the defendants argued that the Court could properly convert the nonexhaustion issue to a summary judgment motion at this stage. However, doing so would be inappropriate in this case for the following reasons. When treating a motion under Rule 12(b)(6) as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Although

Mr. Schill was aware the defendants submitted matters outside the pleadings in support of their exhaustion argument, they did not argue in their written papers that the motion should be converted to a summary judgment motion.  The Court also did not provide Mr. Schill with any explicit notice that conversion of the motion to dismiss into a motion for summary judgment was being contemplated.  Because Mr. Schill did not provide materials outside the pleadings in resistance to the motion to dismiss, there is no evidence that he had constructive notice of that possibility. *Cf. Madewell v. Downs*, 68 F.3d 1030, 1048 (8th Cir. 1995) ("A district court's failure to give formal notice that it will treat a motion to dismiss for failure to state a claim as a motion for summary judgment is harmless where the nonmoving party has submitted materials outside of the pleadings in support of its resistance to a motion to dismiss.").  Moreover, as a pro se litigant, the reality is that Mr. Schill was likely unaware of the implications of the defendants' submission of material outside his complaint on a motion to dismiss at this stage.

Further, during the hearing, Mr. Schill's comments suggest that he felt prevented or discouraged from using the prison's grievance procedures to vet his complaints.  To the extent that he argues administrative remedies were not available to him, the record is insufficient for the Court to address such an issue at this time.

The defendants also contend that the Court need not convert their motion to dismiss to one for summary judgment to resolve the exhaustion issue because "matters of public record, orders, materials embraced by the complaint, and exhibits

19

attached to the complaint may be relied upon [by the Court]." [Defs.' Mem. at 6.] At the hearing, the defendants asserted that the Court could consider the exhibits they submitted in support of their exhaustion argument under *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999). The Court disagrees with the defendants' understanding of that authority.

In *Porous Media*, the Eighth Circuit provided that certain items not in the complaint itself can be considered by the Court without converting a motion to dismiss into a motion for summary judgment:

> When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, . . . as well as materials that are necessarily embraced by the pleadings.

186 F.3d at 1079 (8th Cir. 1999) (internal citations and quotation marks omitted). The Eighth Circuit has further clarified that "'matters outside the pleadings' . . . include[e] any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings.'" *BJC Health Sys. v. Columbia Casualty Co.*, 348 F.3d 685, 687-88 (8th Cir. 2003) (quoting *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992)). Where a defendant provides the district court with documentary evidence "'in opposition to the pleading'" that could not have been offered for any purpose "other than to discredit and contradict [the plaintiff's] allegations," such evidence comprises "matters outside

the pleadings" that cannot be considered without converting the motion to dismiss into a motion for summary judgment.  *Id.* at 688.

In this case, the evidence presented by the defendants on the exhaustion issue goes well beyond merely reiterating what was stated in the complaint.  The exhibits contain written evidence intended to discredit Mr. Schill's allegations concerning his use of the grievance procedures at the NWRCC.  The Court concludes that consideration of such matters outside the pleadings is not permitted without converting the motion to one for summary judgment.[7]  Fed. R. Civ. P. 12(d). Accordingly, the Court will not recommend at this time that the complaint be dismissed for failure to exhaust under the PLRA.

---

[7]     Nothing in this report and recommendation precludes the defendants from making an early summary judgment motion based on their affirmative defense of non-exhaustion, should any portion of this case survive after the District Court addresses this report and recommendation.  Indeed, it may be that on a motion for summary judgment based on exhaustion, the defendants could prevail. Mr. Schill indicated during the hearing that he had no documentary evidence showing his use of the prison grievance system for some of his claims.  He also indicated that he may have only raised certain issues through use of the informal prison "kiosk" system at NWRCC.  While such efforts may indeed fail to comply with the PLRA's exhaustion requirements, the record should be fully developed before the Court renders summary judgment in favor of the defendants on this basis.

Ultimately, resolution of these procedural issues may be academic.  This Court has recommended that all of Mr. Schill's claims be dismissed for failure to state a claim and that his request for injunctive relief also be dismissed for lack of standing. If the District Court adopts those conclusions, it will of course be unnecessary to engage in an early summary judgment motion on the issue of exhaustion.

## Recommendation

For the reasons stated above, the Court makes the following recommendations.

1. The defendants' motion to dismiss [ECF No. 15] should be **GRANTED** because Mr. Schill lacks standing to pursue his claim for injunctive relief and has failed to state a claim on which relief can be granted.

2. This action should be **DISMISSED**.

Date: November 22, 2016

_s/ Katherine Menendez_
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.